UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ERIC DEXTER WELCH,

        Defendant.

_____/

Case No. 1:22-cr-20525

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING MOTION FOR EARLY
TERMINATION OR MODIFICATION OF SUPERVISED
<u>RELEASE [3], AND DENYING DEFENDANT'S MOTION FOR TRAVEL [4]</u>**

In 2010, a jury in the Western District of Michigan convicted Defendant Eric Dexter Welch for possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2) and 18 U.S.C. § 2256(8)(A). *United States v. Welch*, No. 2:10-cr-8, ECF No. 59, PageID.156 (W.D. Mich. 2010). The Court sentenced him to 168 months' imprisonment and a life term of supervised release. *Id.* After jurisdiction was transferred to this Court, ECF No. 1, Defendant moved to terminate his supervised release or modify certain conditions in 2023, ECF Nos. 3, 4. He also sought permission to travel to the Philippines. For the following reasons, the Court will deny both motions.

## BACKGROUND

In 2007, Defendant was charged in state court with (1) accosting a child for immoral purposes, and (2) interfering with a telecommunications access device.

1

*Welch v. People of State of Michigan*, No. 2:14-cv-243, 2016 WL 890336, at \*1 (W.D. Mich. Mar. 9, 2016). He pleaded guilty to those charges in July 2007.

About three years later, the United States brought federal charges. *United States v. Welch*, No. 2:10-cr-8 (W.D. Mich. 2010). A federal grand jury returned an indictment, and later a superseding indictment, that charged Defendant with one count of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A). ECF No. 1-3, PageID.22–23. After a two-day trial, a jury convicted Defendant of the child pornography charge. *United States v. Welch*, No. 2:10-cr-8, ECF No. 43 (W.D. Mich. 2010).

The Court then sentenced Defendant to 168 months' imprisonment. ECF No. 1-1, PageID.3. He was also sentenced to a life term of supervised release. *Id.* at PageID.4. Defendant served his term of imprisonment and was released on August 31, 2022. ECF No. 7, PageID.110.

To date, Defendant has served over three-and-a-half years on supervised release. In 2023, after more than a year on supervised release, Defendant moved to terminate his supervision or, alternatively, modify his release conditions. ECF Nos. 3, 10. In addition to that motion, Defendant moved for permission to travel to the Philippines. ECF No. 4. But recently in March 2026—after he filed these motions— Defendant was arrested in Wisconsin for allegedly exposing himself in a public hot tub. Both his Probation Officer and the Government therefore opposed Defendant's motions.

## LEGAL STANDARD

Under 18 U.S.C. § 3583(e)(1), the Court may, after considering certain § 3553(a) factors, "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003). The statute "does not require a finding of exceptionally good behavior before a district court may grant a motion for early termination of supervised release, though such behavior remains a relevant consideration." *United States v. Hale*, 127 F.4th 638, 642 (6th Cir. 2025).

Similarly, a court may "modify, reduce, or enlarge the conditions of supervised release" at any time before the term expires or is terminated. 18 U.S.C. § 3583(e)(2). But, as with early termination, the statute requires courts to consider the relevant sentencing factors before altering the terms of supervision. *Id.*

## DISCUSSION

The Court will first explain why Defendant's motion to terminate or modify his supervised release must be denied. It will then explain why his motion to travel likewise does not pass muster.

I.     <u>Motion to Terminate or Modify Supervised Release [3,10]</u>

Here, the governing factors do not support early termination or modification of Welch's supervision. [1]

The first two considerations carry much weight here. They command the Court to examine the nature of the offense and Defendant's history, alongside the need for deterrence, public protection, and effective treatment. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D). On balance, these considerations require continued supervision.

Defendant did, to be sure, make meaningful progress at the start of his supervised release. He completed a sex-offender treatment program and continued therapy with private providers, one of whom assessed his risk of reoffending as "very low." ECF No. 3-1, PageID.69–71. He maintained steady employment as an electrical engineer, earning promotions for his contributions. And he pursued religious involvement, forming stable personal relationships and receiving letters attesting to his character. ECF No. 3-2, PageID.75. Those efforts reflected real strides.

But they do not erase the broader record. Defendant's instant conviction for child pornography—an offense that is both "'abhorrent'" and "'very serious,'" *Vary*, 683 F. Supp. 3d at 670 (quoting *United States v. Stall*, 581 F.3d 276, 288 (6th Cir. 2009))—did not arise in isolation. It followed two prior convictions involving sexual conduct with minors: a 2000 conviction for fourth-degree criminal sexual conduct with

---

[1] Although the Court sometimes has to hold a hearing for modifications of supervised release, *see* Fed. R. Crim. P. 32.1(c)(1), it does not need to do so when the terms of "supervised release will not be modified." *United States v. Laughton*, 658 F. Supp. 3d 540, 543 (E.D. Mich. 2023).

a 13-year-old, and a 2007 conviction for accosting a minor for immoral purposes involving a 14-year-old. Notably, the latter offense occurred after Defendant had already participated in treatment and rehabilitative programming. Most concerning, Defendant now faces a recent arrest in Wisconsin while traveling for work. Those pending charges, though unresolved, cast doubt on the durability of his progress and echo the very pattern that led to his conviction.

Against that backdrop, Defendant's initial success, while commendable, does warrant release. Compliance with supervised release is the baseline that the law demands. *Vary*, 683 F. Supp. 3d at 669. The same is true of gainful employment. *Id.* And while a treatment provider's favorable assessment and Defendant's moral formation are relevant, the pending charges cut the other way, suggesting that Defendant continues to struggle to avoid returning to the same historical pattern of misconduct. Taken together, the first two factors weigh heavily against ending supervision.

The third factor—"the kinds of sentence and the sentencing range established for [Defendant's offense]," 18 U.S.C. § 3553(a)(4)—reinforces the Court's conclusion. Defendant's offense carries a supervised release range of five years to life. 18 U.S.C. § 3583(k). Though not dispositive, *see United States v. Collins*, 171 F.4th 830, 2026 WL 891186, at *4 (6th Cir. Apr. 1, 2026), Defendant has served only three-and-a-half years, falling short of the statutory five-year minimum under § 3583(k). Considered with the rest of the factors, the concerns are applicable here.

The remaining factors do not alter the analysis. Defendant identified no

pertinent policy statement bearing on early termination, rendering the fourth factor neutral. *See* 18 U.S.C. § 3553(a)(5). The fifth factor—avoiding unwarranted disparities, *id.* § 3553(a)(6)—cuts against termination. Defendant's life term falls within the statutory range. A continued term of supervised release is therefore "presumptively reasonable" without posing a glaring disparity that needs rectification. *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013); *see also Kennedy*, 499 F.3d at 553. Finally, the sixth factor, addressing restitution, carries little weight here because no restitution was ordered.

Next, Defendant asked the Court to modify several existing conditions of his supervised release. ECF No. 3, PageID.57–61. Most notably, he sought to relax conditions that limited his contact with his two minor sons so that he may have a greater connection with them. *Id.* at PageID.52. He also asked the Court to ease restrictions on his travel within the United States and on his use of electronic devices for employment purposes. *Id.* at PageID.53–54. Last, Defendant asked the Court to modify his current prohibition on alcohol consumption and terminate certain conditions that he asserts he has already completed. *Id.* at PageID.54–55. Defendant's motion, however, did not address the sentencing factors or explain how they justify the requested modifications.

That omission is significant. Many of the challenged conditions—including those governing contact with minors and travel—already permit case-specific exceptions with the approval of Defendant's Probation Officer. *See* ECF No. 1-1, PageID.4–5. Moreover, Defendant's pending charges flow from his conduct while

traveling outside the judicial district for work, militating against allowing him to travel without permission. Absent any developed argument grounded in the statutory factors, and the new charges in Wisconsin, the Court sees no basis to disrupt the existing supervised release requirements. The Court will therefore deny Defendant's motion.

II.     Defendant's Motion to Travel [4]

Defendant's separate motion to travel likewise fails. As his conditions of supervised release mandate, ECF No. 1-1, PageID.4, he sought permission to travel to the Philippines for thirty days. Defendant intended to religiously validate his marriage with his spouse, a Filipino citizen whom he married virtually in 2022 under Utah law. *See* ECF No. 4, PageID.96, 107. Defendant emphasized that, at least when he filed the motion, he had not committed a crime since 2007. *Id.* at Page.100. He also emphasized that his wife tried to obtain a visa to travel to the United States for the validation ceremony, but the United States Consular Officer denied the visa request. *Id.* at PageID.103.

Defendant's arguments do not persuade the Court to authorize his requested travel at this time. He did not explain why his spouse cannot resubmit her application for a temporary visa, further expounding her ties to the Philippines, which could allow the couple to conduct the ceremony in the United States. And most importantly, his recent arrest—stemming from conduct that allegedly occurred while he traveled outside the judicial district—strongly counsels against foreign travel.

**WHEREFORE**, it is hereby **ORDERED** that the motion to terminate or modify conditions of supervised release [3] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for travel [4] is **DENIED**.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 30, 2026